April 7, 2026

**<u>Via ECF</u>**

The Honorable Sallie Kim
United States District Court for the
Northern District of California
San Francisco Courthouse, Courtroom C – 15th Floor
450 Golden Gate Ave.,
San Francisco, CA 94102

> Re: ***Roblox Corporation v. PlayerAuctions, Inc.***
> **Case No.: 3:25-CV-01139-MMC**

Dear Magistrate Judge Kim:

Plaintiff Roblox Corporation ("Roblox") respectfully submits this Discovery Letter Brief regarding Defendant PlayerAuctions, Inc.'s ("PlayerAuctions") boilerplate objections, in lieu of any response, to every single one of Roblox's last sets of Interrogatories, Requests for Admissions, or Requests for Production (the "Requests").

While Roblox is loath to proceed with unilateral discovery letter briefing, PlayerAuctions would not submit to a joint filing, even though fact discovery closed last Tuesday and the motion to compel deadline expires today under Civil Local Rule 37-3. As described in more detail in the declaration of Patrick Hammon filed herewith, Roblox had no other option than to proceed accordingly to preserve its rights.

For the reasons set forth below, Roblox respectfully requests an order compelling PlayerAuctions to withdraw its boilerplate objections and respond to Roblox's Requests.

Respectfully submitted,

Dated: April 7, 2026          PILLSBURY WINTHROP SHAW PITTMAN LLP

*/s/ Patrick Hammon*
Patrick Hammon

Attorney for Plaintiff,
Roblox Corporation

I.      **ROBLOX'S STATEMENT OF THE DISPUTE**

On March 1, 2026, Roblox timely served its last sets of Interrogatories, Requests for Admission, and Requests for Production (collectively, the "Requests"). *See* Hammon Decl., **Exs. A-C**. Thirty days later, PlayerAuctions served its "responses," which consisted entirely of copy-paste boilerplate objections, *without a single substantive response*, even as to what would seem to be basic facts, like whether PlayerAuctions owns the website bearing its name. *See, e.g.*, Hammon Decl., **Ex. E** at Resp. to RFA No. 1; *see also id.*, **Ex. D** (Rog Responses), **Ex. F** (RFP Responses).

PlayerAuctions did not even attempt to answer the portions of the Requests it did *not* believe were objectionable. *Bob Barker Co., Inc. v. Ferguson Safety Prods., Inc.*, 2006 WL 648674, at *6 (N.D. Cal. Mar. 9, 2006) (responding party must respond to portions of request that are not subject to a legitimate objection). Nor did it attempt to narrow the issues in any manner. Instead, it asserted the following boilerplate objections to virtually every single Request that the discovery is: (i) vague and ambiguous (as to plain English terms, such as "identify" and "relied upon"); (ii) overbroad, unduly burdensome, and not proportionate to the needs of the case (without offering a single fact as to why); (iii) compound because it contains subparts (even though relevant subparts are permissible); (iv) cumulative because it seeks information already requested by Roblox (without pointing to a single prior request to support this assertion); and (v) served at the end of discovery (even though PlayerAuctions served its own discovery *on the same day* the Requests at issue here were served (*see* Hammon Decl., **Ex. G**)). None of these objections provide a cognizable basis for refusing to respond to discovery altogether.

PlayerAuctions' attempt to withhold critical information—*e.g.*, how much money it made using Roblox's marks, its market share, and its knowledge of Roblox's Terms of Use (among other core issues)—cannot be countenanced. If PlayerAuctions is permitted to avoid responding to each

and every Request at issue, at the close of fact discovery, Roblox will be materially prejudiced in pursuing its claims because it will be "deprived of any meaningful opportunity to follow up" on or "incorporate [the requested information] into [its] litigation strategy." *See Payne v. Exxon Corp.*, 121 F.3d 503, 508 (9th Cir. 1997).

## II.   ROBLOX'S MEET AND CONFER EFFORTS

On the morning of April 2, Roblox asked PlayerAuctions to meet and confer. L.R. 37-1. In that request, and in order to facilitate a more meaningful discussion, Roblox asked PlayerAuctions to clarify its positions, including whether it actually intended on standing on its "vagueness" objection to avoid answering the Requests. PlayerAuctions did not substantively respond, instead indicating it could not meet and confer until April 6—the day before the cutoff to move to compel. During the parties' eventual meet and confer, PlayerAuctions indicated it would stand on its objections, unless Roblox made a narrowed "compromise" proposal. That same day, even though Roblox contends *all* of its Requests should be answered, to avoid motion practice, Roblox proposed that PlayerAuctions respond to eleven categories of Requests, each narrowly tailored to specific issues in the case. Hammon Decl., ¶ 9 & **Exs. H-I**.

Although Roblox provided the very information PlayerAuctions requested to supposedly facilitate a "compromise," PlayerAuctions did not substantively respond to Roblox's meaningful proposal. Instead, on April 7 at around 5:20pm PT, the same day joint letter briefs are due, PlayerAuctions ultimately informed Roblox that it would not be able to submit to joint briefing and instead would submit a response to Roblox's filing "next week." Hammon Decl., **Ex. I** at p.1. Accordingly, Roblox had no choice but to proceed unilaterally to preserve its rights. *Id.*

## III.   LEGAL STANDARD

The party seeking to compel discovery "has the burden of establishing that its request

satisfies the relevancy requirements of Rule 26(b)(1)." *La. Pac. Corp. v. Money Market 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012). The resisting party "has the burden of showing that discovery should not be allowed, and also has the burden of clarifying, explaining and supporting its objections with competent evidence." *Id.*; *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) ("Under the liberal discovery principles of the Federal Rules defendants were required to carry a heavy burden of showing why discovery was denied.").

## IV.    ROBLOX'S REQUESTS SEEK HIGHLY RELEVANT INFORMATION

The requested discovery goes to the heart of Roblox's claims (ECF No. 52), including trademark infringement, false designation of origin, false advertising, and tortious interference. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("[a] complaint guides the parties' discovery….").  Among other things, the Requests seek:

1. **Identifying Information about Sellers/Resellers of Roblox Items on PlayerAuctions** (*RFP 107-108; Rogs 20, 23*) (relates to: <u>interference with contract claim</u>; <u>likelihood of confusion allegation</u>; <u>conversion claim</u>)
2. **Financial Metrics, Cost Allocation Methodology, and Transaction Volume** (*Rogs 19, 21; RFPs: 87-90, 92, 93, 107*) (relates to: <u>damages calculations</u>)
3. **PlayerAuctions's Market Share** (*RFPs 86, 91; Rog 22*) (relates to: <u>damages calculation</u>; <u>likelihood of confusion allegation</u>)
4. **PlayerAuctions's Use of Roblox Marks and Search Engine Optimization** (*Rog 24; RFPs 96, 104, 115; RFAs 16-35, 61-67, 73-78, 86-91*) (relates to: <u>likelihood of confusion</u>; <u>willfulness</u>; <u>infringement</u>)
5. **Knowledge of Roblox's Terms of Use/Contracts** (*RFP 93; 101, 102, 106; RFAs 12-14; 57-60, 70-71*) (relates to: <u>willfulness</u>; <u>interference with contract claim</u>)
6. **Age Verification and PlayerAuctions's Subversion of Roblox's Safety Mechanisms** (*RFPs 95, 97-99, 109; RFAs: 40-56*) (relates to: <u>damages</u>; <u>causation</u>; <u>reputational harm</u>)
7. **Roblox Account Listings** (*Rog 19, 20; RFPs 100, 102, 106-108, 110-111; RFAs 13-16, 36-39, 49-52, 68-69, 77*) (relates to: <u>interference with contract claim</u>; <u>likelihood of confusion allegation</u>; <u>conversion claim</u>)
8. **PlayerAuctions' Review Manipulation** (*RFP 105; RFAs 79-84*) (relates to: <u>false advertising</u>; <u>intentionality of conduct</u>; <u>likelihood of confusion</u>; <u>damages</u>)
9. **Corporate Structure and Control of PlayerAuctions Website** (*RFPs 94, 103, 112-114; RFAs 1-14, 72-76, 85; Rogs 23, 25*) (<u>prima facie elements of every claim</u>; <u>damages</u>)
10. **Reputational Harm** (*RFP 100, 109*) (relates to: <u>damages</u>; <u>causation</u>)

11. **Records/completeness of responses** (*RFP 116*)

These Requests are narrowly tailored to PlayerAuctions' Roblox-related conduct and directly map on to the elements of Roblox's claims, including liability and willfulness. They also bear directly on damages, including PlayerAuctions' revenues and profits derived from Roblox-related activity on PlayerAuctions' website (information of which PlayerAuctions is the only source). The Requests are therefore proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1); *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (relevance broadly encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.").

Among these relevant categories include PlayerAuctions' financial data, which is central to Roblox's claims and cannot be deferred, particularly given the gaps in PlayerAuctions' explanations of its own financials. At deposition, PlayerAuctions' CEO testified he does not know what constitutes the "costs" used to derive profits, does not understand how revenue and profit are calculated for Roblox-related activity, and cannot identify the methodology used to allocate those figures. *See, e.g.*, Hammon Decl., **Ex. J** (Radke Dep.) at 21:19-24:25. This limited visibility is compounded by similarly unhelpful testimony that Roblox-related transactions may not have been consistently captured in PlayerAuctions' financial data. *See id.*, **Ex. J** (Radke Dep.) at 10:9-11:5; 32:4-9. This relevant financial picture is necessary to determine how PlayerAuctions tracks and reports Roblox-related activity, to assess the completeness of its disclosures, and to determine the scope of revenue and any associated damages. *See Mike's Novelties, Inc. v. PIV Enterprises, Inc.*, 2025 WL 1368904, at *5 (E.D. Cal. May 12, 2025) ("financial documents are relevant in calculating and proving damages in [a] trademark infringement action."). Without this discovery, Roblox is left with financial gaps that only PlayerAuctions can fill (but is refusing to do).

For instance, RFP No. 107 goes directly to the core of Roblox's liability and damages

4

theories because it seeks comprehensive information regarding Roblox-related account listings and transactions on PlayerAuctions' platform, including the identity of buyers and sellers, the content and representations of listings (*e.g.*, "age verified," "18+"), and the financial terms of each transaction. Hammon Decl., **Ex. C** at pp. 13-14. This information is critical to establishing: (i) likelihood of confusion; (ii) the scope and scale of PlayerAuctions' use of Roblox's marks in commerce, (iii) the prevalence of listings that misrepresent affiliation or facilitate conduct that violates Roblox's Terms of Use, (iv) PlayerAuctions' knowledge and facilitation of such conduct, and (v) the extent of economic harm and unjust enrichment resulting from Roblox-related transactions. *See, e.g.*, ECF No. 52 (FAC) ¶¶ 43-67, 79, 85, 90, 129-132, 134-136. It is also directly relevant to Roblox's safety and child-protection concerns, as the requested data is necessary to trace specific accounts sold through PlayerAuctions and determine whether those accounts (particularly those marketed as age-verified or unrestricted) have been used to expose minors to harm or circumvent Roblox's safeguards. Hammon Decl., **Ex. J** (Radke Dep.) at 46:6-50:1. Without this data, Roblox cannot tie specific listings and transactions to the infringement, interference, safety risks, and damages alleged in the complaint, nor can it test PlayerAuctions' assertions regarding the volume, nature, and impact of Roblox-related activity on its platform. This request, among others, is therefore narrowly tailored and proportional to the needs of the case.

## V.    <u>PLAYERAUCTIONS' RESPONSES ARE BOILERPLATE AND IMPROPER</u>

In response to each and every Request, PlayerAuctions recycled boilerplate objections in lieu of providing a single substantive answer. This is plainly improper. A responding party must "specifically" explain why a particular request is objectionable and "may not rely on boilerplate, conclusory, or speculative" objections. *Jefferies Funding LLC v. Dasagroup Holdings Corp.*, 2025 WL 2908571, at *2 (N.D. Cal. Oct. 14, 2025); *Jones v. Amicizia Events, Inc.*, 2020 WL 6065927,

at *1-2 (C.D. Cal. Apr. 3, 2020) (boilerplate objections arguing requests are "overbroad and unduly burdensome" are "too general to merit consideration and are therefore waived"). None of PlayerAuctions' objections constitute a valid basis for refusing to answer a single Request.

### A.    PlayerAuctions' "Vagueness" Objections Are Evasive

PlayerAuctions objects to virtually every Request on the grounds that it is "vague and ambiguous," including as to straightforward English terms such as "changed its name," "the section of PlayerAuctions' website," "uses," "corporate structure," and "agreements" (among others). *See, e.g.*, Hammon Decl., **Ex. E** at Resp. to RFA Nos. 12, 14, 16, 18, 20, 23, 25, 26; **Ex. F** at Resp. to RFP Nos. 92-98, 112-114. PlayerAuctions even goes so far as to assert a blanket "vagueness" objection to the entire subject matter of a Request. *Id.*, Ex. D (Rog Responses). A sophisticated entity, however, cannot feign ignorance of the meaning of commonly used words to avoid complying with discovery. *Gemini Data, Inc. v. Google LLC*, 2026 WL 785529, at *2 (N.D. Cal. Mar. 20, 2026) ("The resisting party must specifically explain the reasons why the request at issue is objectionable and may not rely on boilerplate, conclusory, or speculative arguments."). Even if its objections were legitimate (they are not), PlayerAuctions did not attempt to answer even those portions of the Requests it does *not* contend are vague, casting serious doubt over the veracity of its "vagueness" objections. *Bob Barker Co., Inc.*, 2006 WL 648674, at *6.

### B.    PlayerAuctions' "Burden" Objections Are Meritless (and Inconsistent with Its Own Conduct)

PlayerAuctions objects to every Request as "overbroad, unduly burdensome, and not proportionate to the needs of the case," and strangely objects that the Requests were served "at the close of fact discovery." *See* Hammon Decl., **Exs. D-F**. Neither objection has merit.

As to undue burden: PlayerAuctions does not offer a single fact, declaration, or concrete explanation in support of any of its burden objections. A party resisting discovery on burden

6

grounds must do more than just say so; it must specifically demonstrate why compliance would be burdensome. *Gemini Data*, 2026 WL 785529, at *2; *La. Pac. Corp. v. Money Mkt. 1 Invest. Inv. Dealer*, 285 F.R.D. 481, 485 (N.D. Cal. 2012); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). PlayerAuctions has not even attempted to carry that burden here.

As to timing: PlayerAuctions' suggestion that Roblox's Requests were served "at the close of fact discovery" is not only inaccurate, but also disingenuous, especially since PlayerAuctions served a 30(b)(6) deposition notice with twenty-four topics *on the same day* Roblox's served its Requests. *See* Hammon Decl., **Ex. G** (30(b)(6) notice). Roblox complied with its discovery obligations and timely made its corporate representative available for deposition. In stark contrast, PlayerAuctions refused outright to answer a single Request from Roblox because it claims it is too close to the end of discovery. *Id.*, **Exs. D-F**. Courts have foreclosed this exact discovery tactic. *See, e.g.*, *Mushroom Associates v. Monterey Mushrooms, Inc.*, 1992 WL 442898, at *4 (N.D. Cal. Aug. 21, 1992) (granting motion to compel and rejecting untimely objections where responses were due on the discovery cutoff date, rendering the requests timely).

### C. PlayerAuctions' "Cumulativeness" Objection Is Frivolous

Without articulation, PlayerAuctions asserts that virtually every Request is cumulative or duplicative of a prior request. *See* Hammon Decl., **Exs. D-F**. Not so. Roblox's Requests are targeted at information it simply does not have. If the contrary were true, and PlayerAuctions' objection had any factual basis, it would have identified prior discovery requests aimed at the same subject matter. Tellingly, it did not do so. This objection, like the others, is meritless and does not provide a basis to avoid responding to discovery. *Jefferies Funding*, 2025 WL 2908571, at *2.

### D. PlayerAuctions' "Subparts" Objections Fail Because the Subparts Are Logically Related to Each Primary Question

PlayerAuctions objects that every single interrogatory and request for production at issue

is "compound" and contains "improper subparts." *See* Hammon Decl., **Ex. D** (Rog Responses), **Ex. F** (RFP Responses). This objection fails for two independent reasons. First, subparts that are logically or factually related to a single primary question are expressly permitted. *Loop AI Labs Inc. v. Gatti*, 2016 WL 9132846, at *2 (N.D. Cal. May 6, 2016) (ordering full responses to interrogatory subparts because they were "logically or factually subsumed within and necessarily related to the primary question") (citing *Trevino v. ACB Am., Inc.*, 232 F.R.D. 612, 614 (N.D. Cal. 2006)). Each of the Requests is organized into discrete components that are necessary to obtain a complete answer to the primary question. For example, RFP No. 90 asks for the financial records underlying the profit figures PlayerAuctions reported in response to Interrogatory No. 1. Hammon Decl., **Ex. C** at pp. 9-10. Its subparts (a) through (f) each address a distinct, but necessarily related component of that same financial picture: the underlying ledger entries, the calculation methodology, the cost allocation approach, the cost categories deducted, the allocation formulas used, and any adjustments or revisions made. Each subpart is inseparable from the primary question. Requiring PlayerAuctions to answer the primary question while refusing its subparts would produce an incomplete and misleading answer—which is precisely what the rules prohibit.

Second, and in any event, PlayerAuctions did not attempt to answer a single subpart of any Request. If PlayerAuctions genuinely believed only certain subparts were objectionable, it was obligated to answer the rest. *Bob Barker Co., Inc.*, 2006 WL 648674, at *6. Its wholesale refusal to engage with any component of any the Requests confirm that its "subparts" objection, like the others, is yet another pretext for non-response, rather than a legitimate discovery objection.

## VI.    CONCLUSION

For the foregoing reasons, Roblox respectfully requests an order compelling PlayerAuctions to withdraw its boilerplate objections and respond to all of Roblox's Requests.