PILLSBURY WINTHROP SHAW PITTMAN LLP
PATRICK HAMMON (255047)
patrick.hammon@pillsburylaw.com
ALEXIS N. WANSAC (*pro hac vice*)
alexis.wansac@pillsburylaw.com
SARAH T. STEHLE (*pro hac vice*)
sarah.stehle@pillsburylaw.com
2400 Hanover Street
Palo Alto, CA 94304-1115
Telephone:     650.233.4500
Facsimile:     650.233.4545

Attorneys for Plaintiff
ROBLOX CORPORATION

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| ROBLOX CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>PLAYERAUCTIONS, INC.,<br><br>Defendant. | Case No. 3:25-CV-01139-MMC<br><br>**PLAINTIFF ROBLOX CORPORATION'S CONSOLIDATED REPLY IN SUPPORT OF MOTIONS TO EXCLUDE THE REBUTTAL TESTIMONY OF ERNAN HARUVY**<br><br>Date:       May 8, 2026<br>Time:       9:00 a.m.<br>Location:   Ctrm. 7, 19th Floor<br>Judge:      Hon. Maxine M. Chesney |

## TABLE OF CONTENTS

INTRODUCTION ....................................................................................................................5

LEGAL STANDARD.............................................................................................................7

ARGUMENT ..........................................................................................................................7

    I.    Professor Haruvy's Rebuttal to Ms. Butler Does Not Satisfy Rule 702. .......................7

        A.    Professor Haruvy's Opinions Are Not Based on Sufficient Facts or Data. .......7

        B.    Professor Haruvy's Opinions Do Not Fit the Issues in this Case. ...................11

        C.    Professor Haruvy's Opinions Do Not Reflect a Reliable Application of Any Methodology. ........................................................................................12

    II.    Professor Haruvy's Rebuttal to Dr. Castronova Also Does Not Satisfy Rule 702. ......15

        A.    Professor Haruvy's Antitrust and Legal Opinions Are Improper and Outside the Scope Of Rebuttal........................................................................15

        B.    Professor Haruvy's Opinions Do Not Fit the Theory He Claims to be Rebutting.........................................................................................................17

        C.    Professor Haruvy Is Not Qualified to Offer These Opinions. .........................18

CONCLUSION.....................................................................................................................19

ROBLOX'S CONSOLIDATED REPLY ISO MOTIONS TO EXCLUDE HARUVY
Case No: 3:25-CV-01139-MMC

# TABLE OF AUTHORITIES

## Cases

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
    174 F.3d 1036 (9th Cir. 1999) ...............................................................................................9

*Claar v. Burlington N.R. Co.*,
    29 F.3d 499 (9th Cir. 1994) ...........................................................................................7, 9, 10

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993).............................................................................................5, 6, 7, 10, 11

*Diviero v. Uniroyal Goodrich Tire Co.*,
    114 F.3d 851 (9th Cir. 1997) ............................................................................................8, 10

*DSU Med. Corp. v. JMS Co.*,
    296 F. Supp. 2d 1140 (N.D. Cal. 2003), *aff'd*, 471 F.3d 1293 (Fed. Cir. 2006).........................13

*Estate of Barabin v. AstenJohnson, Inc.*,
    740 F.3d 457 (9th Cir. 2014), *overruled on other grounds by United States v. Bacon*,
    979 F.3d 766 (9th Cir. 2020) ............................................................................................7, 16

*Gen. Elec. Co. v. Joiner*,
    522 U.S. 136 (1997).................................................................................................5, 11, 14, 17

*Goben v. Wal-Mart Stores, Inc.*,
    No. 2:12-CV-86 JCM VCF, 2014 WL 2736088 (D. Nev. June 16, 2014) ..........................15, 16

*Hangarter v. Provident Life & Accident Ins. Co.*,
    373 F.3d 998 (9th Cir. 2004) ..................................................................................................16

*In re Katz Interactive Call Processing Pat. Litig.*,
    No. 07-2196 RGK, 2009 WL 10676152 (C.D. Cal. Mar. 11, 2009) .........................................16

*Interstellar Starship Servs., Ltd. v. Epix, Inc.*,
    304 F.3d 936 (9th Cir. 2002) ....................................................................................................9

*Kumho Tire Co., Ltd. v. Carmichael*,
    526 U.S. 137 (1999)..............................................................................................................6, 7

*Lindner v. Meadow Gold Dairies, Inc.*,
    249 F.R.D. 625 (D. Haw. 2008)..........................................................................................15, 16

*Lucido v. Nestle Purina Petcare Co.*,
    217 F. Supp. 3d 1098 (N.D. Cal. 2016) ..............................................................................16, 18

*Lust By and Through Lust v. Merrell Dow Pharms., Inc.*,
    89 F.3d 594 (9th Cir. 1996) ......................................................................................................7

*Nissan Motor Co. v. Nissan Computer Corp.*,
  378 F.3d 1002 (9th Cir. 2004) ...............................................................................9, 12

*Sheehan v. Daily Racing Form, Inc.*,
  104 F.3d 940 (7th Cir. 1997) ...............................................................................6

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) ...............................................................................12

*Tevra Brands LLC v. Bayer HealthCare LLC*,
  No. 19-CV-04312-BLF, 2024 WL 2261946 (N.D. Cal. May 16, 2024) ................................8, 12

*Valeo Schalter und Sensoren GmbH v. NVIDIA Corp.*,
  No. 23-CV-05721-NW, 2025 WL 3500726 (N.D. Cal. Sept. 26, 2025) ...................................16

*Wendt v. Host Int'l, Inc.*,
  125 F.3d 806 (9th Cir. 1997) ...............................................................................13, 14

Rules and Regulations

Federal Rules of Civil Procedure
  Rule 26(a)(2)(D)(ii) ...............................................................................15

Federal Rules of Evidence
  Rule 104(a)...............................................................................7
  Rule 702 ............................................................................... *passim*
  Rule 702(b) ...............................................................................7

Other Authorities

*PlayerAuctions User Agreement*, PLAYERAUCTIONS,
  https://www.playerauctions.com/about/agreement/ (Section 4.3) (last updated Jan. 8, 2025)...15

**INTRODUCTION**

Plaintiff Roblox Corporation ("Roblox") submits this consolidated reply in further support of its motions to exclude the rebuttal opinions of Defendant PlayerAuctions, Inc.'s ("PlayerAuctions") expert, Professor Ernan Haruvy, Ph.D.—opinions which fail to satisfy Federal Rule of Evidence 702 and *Daubert*.[1] In its Opposition, PlayerAuctions attempts to recast Roblox's motions as a mere "battle of experts."[2] That framing suggests discrepancies in expert methodologies automatically just become questions for the jury to resolve. But disagreements between experts become a matter for the jury only *after* the proponent has satisfied Rule 702's threshold requirements of reliability and relevance; their existence does not somehow relieve the Court of its gatekeeping obligation, as PlayerAuctions suggests they should. Under *Daubert*, the Court must ensure that any expert testimony admitted "rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597.

That gatekeeping function is not optional. Where the proponent fails to establish that the expert's opinions are grounded in sufficient facts, reflect reliable reasoning, and "fit" the issues in the case, exclusion—not cross-examination—is the appropriate remedy. Litigants are not allowed to evade Rule 702 by repackaging unsupported critique as a competing "opinion," nor should the Court admit testimony connected to the facts "only by the *ipse dixit* of the expert." *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Here, Professor Haruvy does not apply <u>*any*</u> reliable methodology to the facts of this case. Instead, he offers a hodgepodge of criticisms of Roblox's experts that rest on unsupported assumptions and irrelevant materials. They are also internally inconsistent as well. At every step, Professor Haruvy fails to do what Rule 702 requires: connect his criticisms to any demonstrated effect on the results. He does not test whether the issues he identifies would affect the results of Ms. Butler's survey. Nor does he engage with the economic theory actually advanced by Dr. Castronova. Instead, he substitutes alternative assumptions and reframes the analysis—without demonstrating that his revisions would produce different results. His opinions thus lack both a reliable foundation and the requisite fit to be

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).
[2] *See* Defendant PlayerAuctions, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff Roblox Corporation's Daubert Motions (ECF No. 97) ("Opposition"), at 13.

considered admissible rebuttal opinions.

As to Butler, Professor Haruvy offers untested criticisms about "marketplace context," audience, and user intent without showing that any of those hypotheses change Butler's measured confusion, all while conceding he performed no analysis showing that any of those hypotheses alter Butler's measured confusion. As to Dr. Castronova, Professor Haruvy does not rebut the theory actually offered. He redefines "RMT" and critiques an entirely different category of conduct. He then layers on competition-law commentary in which he is a self-reported novice. In both instances, he analyzes a different question than the one presented in this case.

PlayerAuctions asks the Court to treat these threshold defects as mere points to cover during cross-examination—almost always without meaningful citation to the report or deposition testimony supposedly curing the issues Roblox raised. To be sure, some of the themes of Professor Haruvy's rebuttal may be fair subjects for PlayerAuctions' counsel to explore on cross-examination of *Roblox's* experts. But that is not what PlayerAuctions offers here. Instead, it seeks to elevate those same unsupported themes into affirmative expert testimony. In so doing, PlayerAuctions offers an expert witness—armed with the imprimatur of court-blessed expertise—to present PlayerAuctions' theories of the case and its unsupported critiques, along with new legal theories altogether, to the jury. Rule 702 does not permit an expert to present speculation or reframed theories under the mantle of expertise simply because they are labeled "rebuttal." That would confuse, rather than assist, a jury.

Rule 702 requires more from expert witnesses. As the Supreme Court has emphasized, the Court's role is to ensure that an expert "employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999); *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir. 1997) (*Daubert* requires "the district judge to satisfy [her]self that the expert is being as careful as he would be in his regular professional work outside his paid litigation consulting."). Where, as here, the expert does not test his hypotheses, does not apply the correct framework, and does not analyze the conduct at issue, the testimony does not assist the jury—it misleads it. In sum, Professor Haruvy's rebuttal opinions do not meet the rigorous standards to which experts are held, and his testimony must be excluded.

## LEGAL STANDARD

Rule 702 imposes a threshold requirement of admissibility, and expert testimony is admissible only if it is both reliable and relevant. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999). The inquiry focuses on the expert's principles and methodology, not just the conclusions. *See Claar v. Burlington N.R. Co.*, 29 F.3d 499, 502–03 (9th Cir. 1994) (affirming exclusion of expert testimony where experts failed to explain the reasoning and methods underlying their conclusions). A qualified expert may testify only if the proponent demonstrates, by a preponderance of the evidence, that the testimony will assist the trier of fact, is based on sufficient facts or data, is the product of reliable principles and methods, and reflects a reliable application of those principles and methods to the facts of the case. Fed. R. Evid. 702.

These requirements present questions of admissibility for the Court under Rule 104(a), not issues of weight for the jury. The party putting forth the expert (here, PlayerAuctions) bears the burden on each element of Fed. R. Evid. 702. *See Lust By and Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) (affirming exclusion of expert testimony where proponent failed to establish admissibility under Rule 702). Testimony that rests on speculation, unsupported assumptions, or an unexplained analytical gap (like Professor Haruvy's) does not satisfy Rule 702. Even though a rebuttal expert need not conduct independent testing in every case, the proponent must still show that the opinions offered are grounded in sufficient facts and reliable reasoning, and that the conclusions do not exceed what that foundation can support.[3]

## ARGUMENT

**I.    Professor Haruvy's Rebuttal to Ms. Butler Does Not Satisfy Rule 702.**

    **A.    Professor Haruvy's Opinions Are Not Based on Sufficient Facts or Data.**

Rule 702 requires that expert testimony be "based on sufficient facts or data." Fed. R. Evid. 702(b). That requirement cannot be satisfied by assumption or speculation. *Daubert*, 509 U.S. at 590

---

[3] *Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) (en banc) *overruled on other grounds by United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020) (en banc) ("We are concerned 'not [with] the correctness of the expert's conclusions but the soundness of his methodology.'"); *Claar*, 29 F.3d at 502–03.

(requiring more than "subjective belief or unsupported speculation"); *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997) (affirming exclusion of speculative expert testimony because it would not assist trier of fact and "was unsubstantiated and subjective, and therefore unreliable and inadmissible"). Professor Haruvy's critique of Ms. Butler's survey rests on precisely that kind of unsupported assumption. He posits how users interact with PlayerAuctions[4] and who those users are.[5] He also speculates about what they intend.[6] But he does not measure, test, or support any of those propositions, let alone with discernible data. Nor does he show that any of them would affect the survey's results. Instead, he assumes the truth of his alternative theories and then proceeds to critique Ms. Butler's survey on that basis.

His "marketplace context" criticism illustrates the point. Professor Haruvy asserts that the Butler survey is flawed because it omits onboarding steps and broader so-called "marketplace context," and PlayerAuctions repeats that contention in its opposition.[7] But Professor Haruvy offers no data or analysis showing that including such "context" would affect consumer perception or alter the survey's results. An expert may not speculate that a different methodology would yield different results without evidentiary support. *See Tevra Brands LLC v. Bayer HealthCare LLC*, No. 19-CV-04312-BLF, 2024 WL 2261946, at *2 (N.D. Cal. May 16, 2024) (confirming that a rebuttal expert must either identify a genuine methodological defect or apply a superior methodology that yields a different result). Absent such a showing, the critique is not grounded in "sufficient facts or data." Fed. R. Evid. 702.

The "marketplace context" premise is also factually incorrect. Professor Haruvy asserts that no genuine user would encounter an isolated listing page without first proceeding through onboarding and other marketplace context.[8] But that is not an accurate description of how the PlayerAuctions website operates. Listings are publicly accessible and can be viewed without registration or

---

[4] Haruvy Rebuttal to Butler Report, ¶¶ 26-29.
[5] *Id*. ¶¶ 12, 18-19, 39.
[6] *Id*. ¶¶ 56-60.
[7] *Id*. ¶¶ 26-29; Opposition at 10.
[8] Haruvy Dep. I, at 104:5–111:6; 115:13–118:9.

onboarding, and Professor Haruvy admits as much.[9] Users therefore can—and do—encounter listings in precisely the manner reflected in the Butler survey, including by accessing publicly available listing pages through search results or shared links, without onboarding. His contrary assumption is wrong. An opinion built on a premise that does not reflect the actual user experience is not based on "sufficient facts or data." Fed. R. Evid. 702.

This also further illustrates Professor Haruvy's fundamental misunderstanding of the case at large. Roblox alleges that PlayerAuctions' search engine optimization strategies and advertising are designed to capture Roblox-related search traffic and mislead users into engaging with PlayerAuctions' unauthorized marketplace (initial interest confusion).[10] "Initial interest confusion occurs when the defendant uses the plaintiff's trademark 'in a manner calculated to capture initial consumer attention, *even though no actual sale is finally completed* as a result of the confusion.'" *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1018 (9th Cir. 2004) (emphasis added) (citing *Interstellar Starship Servs., Ltd. v. Epix, Inc.*, 304 F.3d 936, 941 (9th Cir. 2002) (additional citations omitted); *see also Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*, 174 F.3d 1036, 1062 (9th Cir. 1999) (finding the inclusion of certain metatags sufficient to result in initial interest confusion). The Butler survey was accordingly designed to measure this initial interest confusion.[11] Professor Haruvy's criticism of the Butler survey rests on the premise that a customer of PlayerAuctions would not be confused *after making a purchase*,[12] and thus addresses the wrong inquiry. An expert opinion based on a factual premise that does not reflect the actual record is not reliable under Rule 702. *Claar*, 29 F.3d at 502–03 (excluding expert testimony where experts failed to explain how they applied their methodology to plaintiffs' specific circumstances).

Professor Haruvy also argues that Ms. Butler's survey "inflates" confusion by presenting the Roblox brand in a simplified environment.[13] But that assertion is similarly unsupported by any facts

---

[9] *See* Haruvy Rebuttal to Butler Report, n.8 ("PlayerAuctions' Roblox listings are publicly viewable in the sense that any person can go to the PlayerAuctions website and request a search for Roblox listings and see what is available.")

[10] *See generally* ECF No. 52.

[11] Butler Report at ¶ 9.

[12] Haruvy Dep. I, at 104:5–111:6; 115:13–118:9.

[13] Opposition at 10.

or data. Professor Haruvy does not identify any evidence showing that the survey design increases measured confusion, nor does he cite any data, literature, or analysis establishing that such an effect occurs in this context. The claim of "inflation" is thus not an empirical conclusion grounded in evidence, but an assumption. Without evidentiary support, this is precisely the type of "subjective belief or unsupported speculation" *Daubert* forbids. *Daubert*, 509 U.S. at 590.

The same defect appears in his assertions about the relevant user population and user intent. Professor Haruvy repeatedly claims that PlayerAuctions users are experienced adult traders and that the platform caters to adults through identity verification.[14] But he identifies no methodology for defining or measuring that population. He cites no data supporting those characterizations and offers no analysis of how any purported user sophistication would affect consumer confusion.[15] These are not conclusions drawn from evidence; they are unsupported generalizations. The Ninth Circuit has rejected expert opinions that rest on similar unsupported assumptions. *See Claar*, 29 F.3d at 502–03 (excluding expert testimony where experts failed to explain the reasoning and methods underlying their conclusions); *see also Diviero*, 114 F.3d at 853 (affirming exclusion of speculative expert testimony).

Professor Haruvy also relies on additional factual assertions disconnected from any survey or confusion analysis. For example, he describes Roblox's revenue model and developer economics, but again does not explain how those assertions bear on the validity of Ms. Butler's survey or on consumer perception at the relevant point in time.[16] Such background statements are not "facts or data" supporting an expert opinion; they are narrative assertions without analytical relevance. Expert testimony must be tied to the facts of the case; untethered background narrative does not satisfy Rule 702. *See Daubert*, 509 U.S. at 592 (requiring that opinions have "valid scientific connection to the pertinent inquiry as a precondition to admissibility").

PlayerAuctions attempts to recast these assumptions as "principles" and "economic reasoning," asserting that Professor Haruvy's critique is grounded in established survey design

---

[14] Haruvy Rebuttal to Butler Report, ¶ 39.
[15] Haruvy Dep. I, at 97:6–15.
[16] Haruvy Rebuttal to Butler Report, ¶¶ 14–17.

principles, the factual record, and basic market logic.[17] But loose references to general principles are not enough. *Joiner*, 522 U.S. at 146 ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."). Although Professor Haruvy mentions certain survey design concepts, he does not apply them in a way tied to the facts of this case or supported by data. He identifies no evidence defining or measuring the purported user population. He offers no data showing that his asserted user characteristics are reflected in the relevant audience and no analysis connecting his "economic reasoning" to consumer perception at the point of confusion. Rule 702 requires more. Without an evidentiary foundation linking those principles to the facts, his opinions rest on assumption rather than "sufficient facts or data" and must be excluded.

## B. Professor Haruvy's Opinions Do Not Fit the Issues in this Case.

To be admissible, expert opinions also must "fit" the issues in the case. That is, the testimony must have a "valid scientific connection to the pertinent inquiry" and must assist the trier of fact in resolving the questions actually at issue. *See Daubert*, 509 U.S. at 592. Despite PlayerAuctions' protestations, Professor Haruvy's opinions do not meet this standard either. He narrows the confusion inquiry to "source confusion" alone, while disregarding "authorization confusion" altogether. In fact, he admits he is not even familiar with authorization confusion in the first place.[18] An expert like Dr. Haruvy who applies the wrong legal framework will not assist the trier of fact because all he purports to answer is the wrong question.

His reliance on irrelevant materials only compounds the problem. Professor Haruvy cites Google search query data and internal PlayerAuctions feedback logs as evidence bearing on consumer understanding.[19] But those materials reflect *post*-transaction behavior—what users do or say after engaging with the platform. Ms. Butler's survey, by contrast, measures *pre*-transaction perception: whether consumers are confused at the point of initial encounter. That mismatch is both dispositive and unrebutted. Evidence about post-transaction behavior does not address whether consumers are

---

[17] Opposition at 9.
[18] Haruvy Dep. I, at 49:5–54:23.
[19] Haruvy Rebuttal to Butler Report, ¶¶ 56-60.

confused when *initially* encountering the PlayerAuctions website. It is therefore not pertinent to the relevant inquiry. *See Nissan*, 378 F.3d at 1018. Even if Professor Haruvy's materials are accurate, they do not speak to the relevant inquiry and therefore do not "fit" the issues in this case. Because Professor Haruvy's opinions apply the wrong framework and rely on materials that do not bear on the relevant point of confusion, they cannot assist the trier of fact and should be excluded.

### C. Professor Haruvy's Opinions Do Not Reflect a Reliable Application of Any Methodology.

Rule 702 requires more than identifying potential issues with an opposing analysis. The expert must apply a methodology to the facts and demonstrate that the identified issues have a meaningful effect on the results. Not only that, but the application must be reliable. Professor Haruvy does not make that showing. He identifies what he characterizes as flaws in Ms. Butler's survey, such as the absence of additional marketplace context, but never analyzes whether those features affect the survey's outcome. Nor does he test his hypotheses, quantify any alleged distortion, or otherwise assess whether the survey results would change under his preferred conditions. Without that step, his critique remains incomplete. *Cf. Tevra*, 2024 WL 2261946, at *2.

PlayerAuctions argues that a rebuttal expert may simply identify "methodological defects" without further analysis.[20] That overreads the law. Although a rebuttal expert need not construct an alternative model in every case, the proponent of the testimony still bears the burden of establishing admissibility under Rule 702. Despite PlayerAuctions' heavy reliance on *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134 (9th Cir. 1997) to save Professor Haruvy's untested criticisms,[21] this case does not hold otherwise. In *Southland*, the Ninth Circuit addressed the admissibility of a survey that contained identified methodological defects—such as problems with the survey universe and design—but where the survey was grounded in accepted survey principles and tied to the ultimate question of whether consumers were materially deceived. *Id.* at 1142–43. The court explained that such flaws may affect the weight of the survey, not its admissibility, where the critique is anchored in the survey's actual operation and supported by the record. *Id.* But *Southland* does not stand for the

---

[20] Opposition at 2.
[21] Opposition at 6.

proposition that an expert may simply hypothesize that different conditions would produce different results without evidentiary support. Nor does it relieve the proponent of the burden to show that the expert's opinions are grounded in sufficient facts and reflect a reliable application of methodology. Here, by contrast, Professor Haruvy does not identify tested defects in the survey as conducted. He speculates that omitted "context," alternative populations, or different assumptions might matter, but never shows that they would change the results. That is not a critique of methodology as applied but conjecture about how a different study *might* behave. Identifying a potential flaw is not enough; the expert must show that the asserted defect has a meaningful effect on the analysis. Without that showing, the critique remains speculative and inadmissible.

PlayerAuctions' opposition does not close that gap. It argues that Haruvy identified "methodological defects," but cites no testing or consumer study and offers virtually no record evidence.[22] More importantly, it never shows that omitted "context," a different universe, or alternative explanations would materially change Butler's net-confusion results. At most, those themes may be explored on cross-examination of Butler. They do not become admissible affirmative expert opinions merely because PlayerAuctions labels them rebuttal. *See DSU Med. Corp. v. JMS Co.*, 296 F. Supp. 2d 1140, 1159 (N.D. Cal. 2003), *aff'd*, 471 F.3d 1293 (Fed. Cir. 2006) (rejecting argument that speculative expert opinions should go to the jury and excluding testimony lacking a sufficient evidentiary basis).

PlayerAuctions invokes *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) to suggest that a rebuttal expert may simply identify technical inadequacies in a survey. That is not what *Wendt*

---

[22] Indeed, PlayerAuctions' Opposition relies almost entirely on generalized characterizations of Professor Haruvy's opinions, with minimal citation to the record. Across the Opposition, PlayerAuctions directly cites only two handful of deposition excerpts and does not identify any portion of Professor Haruvy's report—or any independent analysis—showing that the purported defects that Professor Haruvy identifies (as to either of Roblox's experts) were tested, quantified, or demonstrated to affect the conclusions.

Nor, as relevant to this specific issue, do PlayerAuctions (in their opposition) or Professor Haruvy (in his report or depositions) cite any consumer study, empirical literature, or data supporting its assertion that "marketplace context," alternative survey universes, or user intent would materially change the measured confusion. These omissions are telling: the Opposition defends the existence of critique, but not its evidentiary foundation.

holds. The Ninth Circuit addressed the admissibility of survey evidence and explained that, where a survey is conducted according to accepted principles and is relevant, methodological criticisms generally go to weight, not admissibility. *Id.* But that principle presupposes a properly grounded survey and a genuine methodological critique. It does not permit an expert to offer unsupported criticisms without demonstrating that the asserted defect affects the survey's results.

The same is true of Professor Haruvy's alternative explanations for the survey results. He suggests that responses may reflect brand salience, user sophistication, or search intent, but does not evaluate whether any of those factors actually explain the observed results or whether accounting for them would alter the measured level of confusion. Rule 702 does not permit an expert to speculate about possible explanations and present them as conclusions without analysis. *See Joiner*, 522 U.S. at 146 (excluding testimony where there is "too great an analytical gap between the data and the opinion proffered").

That methodological gap is not merely theoretical; it is reflected in the way Professor Haruvy applies his critique. His analysis is marked by internal inconsistencies and factual errors that would confuse, rather than assist, the trier of fact. As discussed above, he asserts that onboarding is required for users to encounter listings, while acknowledging elsewhere that listings are publicly viewable without registration.[23] He refers to an "adult-only" survey that does not exist and mischaracterizes the structure of the Butler survey.[24] These errors reflect a failure to accurately understand the materials he purports to analyze. His report also rests on incorrect premises about the underlying marketplace. For example, he asserts that Roblox does not make games or in-game items (in some instances, Roblox does) and characterizes PlayerAuctions as merely a peer-to-peer exchange that does not create or control the assets being traded (despite PlayerAuctions' role in actively facilitating those transactions, holding money in escrow related to those transactions, and profiting via a percent cut of each transaction).[25] Those assertions are indicative of unreliable fact gathering, and they bear directly on issues in the case. An expert who proceeds from incorrect premises cannot reliably apply any

---

[23] Haruvy Dep. I, at 104:5–111:6; 115:13–118:9.
[24] Haruvy Rebuttal to Butler Report, ¶ 41; Haruvy Dep. I, at 148:23–149:15.
[25] Haruvy Rebuttal to Castronova Report, ¶¶ 35, 57–59; Haruvy Dep. II, at 86:16–88:9, 130:15–19, 132:5–133:14, 137:1–25.

methodology to reach valid conclusions.

In short, Professor Haruvy does not show that the "flaws" he alleges affect the survey results. He does not test his alternative explanations. And he applies his analysis inconsistently and on the basis of incorrect facts. That is not a reliable application of any methodology, and Rule 702 requires that missing step.

## II.     Professor Haruvy's Rebuttal to Dr. Castronova Also Does Not Satisfy Rule 702.

### A.     Professor Haruvy's Antitrust and Legal Opinions Are Improper and Outside the Scope Of Rebuttal.

Professor Haruvy's report includes a discrete opinion in which he ventures into antitrust concepts—discussing competition, restraints, and the Rule of Reason—to evaluate Roblox's Terms of Use. That detour is not responsive to Dr. Castronova's analysis and is improper rebuttal. A rebuttal expert must respond to the opinions actually offered by the opposing expert. He may not introduce a new framework that was not part of the opening report. *See* Fed. R. Civ. P. 26(a)(2)(D)(ii).[26] Dr. Castronova analyzes the economic harm associated with unauthorized, off-platform transactions that violate Roblox's Terms of Use. In portions of his report, Professor Haruvy responds to that analysis. But he then reframes the issue as one of vertical restraints and competitive effects under an antitrust-style framework.[27] That shift addresses a different question altogether. It is not proper rebuttal and must be excluded.

PlayerAuctions characterizes this as mere "economic observation."[28] However, the substance of Professor Haruvy's opinion goes further than mere "economic observation." Professor Haruvy invokes antitrust concepts to assess the purported benefits and costs of Roblox's Terms of Use—an inquiry that imports a Rule-of-Reason analysis. That framework is not part of Dr. Castronova's

---

[26] *See also Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 637 (D. Haw. 2008) (excluding portions of an expert report that "does not contradict or rebut anything" in the Plaintiff's reports as this "does not constitute a proper rebuttal report."); *Goben v. Wal-Mart Stores, Inc.*, No. 2:12-CV-86 JCM VCF, 2014 WL 2736088, at *3 (D. Nev. June 16, 2014) ("As a rebuttal witness, Orchard must 'restrict [his] testimony to attacking the theories offered by the adversary's experts.'" (citation omitted)).

[27] This contention is difficult to reconcile with PlayerAuctions' own restrictions on account transfers and related activity. *See PlayerAuctions User Agreement*, PLAYERAUCTIONS, https://www.playerauctions.com/about/agreement/ (Section 4.3) (last updated Jan. 8, 2025).

[28] Opposition at 19.

analysis and is not necessary to respond to it. Nor is this saved by labeling it economic commentary. Economists may describe market behavior, but they may not import legal frameworks or suggest how conduct should be evaluated under them. *See Estate of Barabin*, 740 F.3d at 463 (expert testimony not reliably tied to the issues in the case should be excluded); *see also Valeo Schalter und Sensoren GmbH v. NVIDIA Corp.*, No. 23-CV-05721-NW, 2025 WL 3500726, at *5 (N.D. Cal. Sept. 26, 2025) (excluding expert testimony in part, where testimony was premised on an incorrect understanding of the governing legal standard, and explaining "[e]xpert testimony that is based on an erroneous understanding or application of the law cannot meet the requirements of Rule 702 because it cannot logically assist the trier of fact") (citing *In re Katz Interactive Call Processing Pat. Litig.*, No. 07-2196 RGK (FFMX), 2009 WL 10676152, at *2 (C.D. Cal. Mar. 11, 2009). Here, Professor Haruvy does not simply describe market dynamics; he applies an antitrust-style framework to evaluate Roblox's conduct.

That distinction matters. PlayerAuctions remains free to argue through counsel that Roblox's TOU are overbroad or anticompetitive. What it may not do is put an unqualified expert before the jury to present that same legal theory under the guise of specialized economic knowledge. *See Lindner*, 249 F.R.D. at 637 (rebuttal limited to the same subject matter); *Goben*, 2014 WL 2736088, at *3 (rebuttal experts may not "put forth their own theories"); *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (expert may not espouse legal opinions).

What makes this even more problematic is that Professor Haruvy's opinions are not supported by any demonstrated expertise in antitrust economics whatsoever. Professor Haruvy admits he is not an antitrust expert and has no training in law.[29] The opinions he offers turn on specialized distinctions, such as the competitive effects of vertical restraints, that he does not purport to analyze using any established antitrust methodology. An expert may not step outside his field to offer opinions requiring specialized knowledge he does not possess. *See Lucido v. Nestle Purina Petcare Co.*, 217 F. Supp. 3d 1098, 1103 (N.D. Cal. 2016).

Finally, even if portions of this testimony could be characterized as economic, the antitrust-

---

[29] Haruvy Dep. II, at 162, 171-173.

based opinions do not rebut Dr. Castronova's analysis. A rebuttal expert must address the analysis actually presented. Instead, Professor Haruvy substitutes a different framework for Dr. Castronova's analysis and critiques the substitution. That is an attempt to introduce new affirmative opinions under the guise of rebuttal.

At a minimum, these antitrust and legal opinions should be excluded.

**B.     Professor Haruvy's Opinions Do Not Fit the Theory He Claims to be Rebutting.**

Professor Haruvy's rebuttal to Dr. Castronova independently fails at the threshold because it does not address the economic theory actually advanced in Dr. Castronova's report. Rule 702 requires that expert testimony "fit" the issues in the case, as an opinion that analyzes a different phenomenon than the one at issue does not assist the trier of fact. Fed. R. Evid. 702. Dr. Castronova analyzes a specific economic activity: unauthorized, off-platform real-money transactions that violate Roblox's Terms of Use. That specific definition is central to his analysis of harm, but Professor Haruvy does not engage with that construct. Instead, he adopts a _different_ definition of "real-money trading" that encompasses a broader set of transactions untethered to the Terms-of-Use violations at issue. By redefining the relevant activity, Professor Haruvy analyzes a different economic phenomenon altogether. His conclusions therefore do not bear on the question Dr. Castronova addresses. An expert may not rebut an opinion by changing the underlying variable and then critiquing the redefined construct, as Professor Haruvy attempts to do here. *See Joiner*, 522 U.S. at 146 (excluding testimony where there is "too great an analytical gap between the data and the opinion proffered").

PlayerAuctions contends that Professor Haruvy's definition of real-money trading is "consistent with the literature" and with Dr. Castronova's prior work.[30] But it cites no authority supporting that assertion, and Professor Haruvy identifies no basis for applying that broader definition here. More importantly, even if alternative definitions exist in the abstract, the relevant inquiry is the one presented in this case. Professor Haruvy does not explain why Dr. Castronova's definition is incorrect or why his own definition should govern the analysis. He simply substitutes it. Because Professor Haruvy analyzes a different category of transactions than the one at issue, his opinions do

---

[30] Opposition at 14.

ROBLOX'S CONSOLIDATED REPLY ISO MOTIONS TO EXCLUDE HARUVY
Case No: 3:25-CV-01139-MMC

not assist the trier of fact in evaluating Dr. Castronova's analysis. They therefore fall outside the scope of proper rebuttal and should be excluded.

Tellingly, neither Professor Haruvy nor the Opposition supplies the literature citation that supposedly makes this definition "standard" for purposes of this case. On this central point, there is *ipse dixit* layered on *ipse dixit*: a report asserting the definition, and an opposition brief defending it, without authority showing that the broader construct is the one relevant here.

### C.    Professor Haruvy Is Not Qualified to Offer These Opinions.

Lastly, PlayerAuctions relies on Professor Haruvy's general background in marketing, economics, and online platforms. That background may qualify him to offer certain economic opinions. But Rule 702 requires more; the proponent must show that the expert is qualified to offer the specific opinions at issue, and PlayerAuctions has not done so.

Several categories of Professor Haruvy's opinions fall outside his demonstrated expertise. Most notably, he offers antitrust-style opinions, despite admitting he is not an antitrust expert and has no training in law.[31] Those opinions require specialized expertise he does not possess and should be excluded. His report also ventures into platform-specific harms arising from unauthorized, off-platform transactions, including the economics of Terms-of-Use enforcement, trust-and-safety operations, and gray-market activity. But he identifies no prior work in the virtual-world context and no experience with platform trust-and-safety systems. He likewise offers no basis for evaluating how such enforcement mechanisms operate or affect platform economics. These opinions depend on field-specific distinctions—most notably, the difference between authorized, on-platform transactions and unauthorized, off-platform activity—that he does not reliably analyze. *See Lucido*, 217 F. Supp. 3d at 1103 (expert in the field of veterinary medicine not qualified to testify about what a consumer would consider material in assessing dog food products).

The limits of his expertise are reflected in basic errors in his report. Professor Haruvy incorrectly asserts that Roblox does not make games or in-game items, that PlayerAuctions does not sell Robux, and that the transactions at issue are disconnected from Robux-based items—claims that

---

[31] Haruvy Dep. II, at 162.

are incorrect and that he later retreated from in deposition. Those errors underscore that he lacks the grounding necessary to offer reliable opinions on the platform-specific issues he addresses. Rule 702 does not permit an expert to rely on general experience to offer opinions requiring specialized knowledge he does not possess. Because Professor Haruvy offers antitrust-based opinions or opinions concerning platform-specific harms beyond his expertise, those opinions should be excluded.

**CONCLUSION**

PlayerAuctions bears the burden of establishing that Professor Haruvy's opinions satisfy Rule 702. It has not done so. His opinions are not grounded in sufficient facts and do not fit the issues in this case. They also do not reflect a reliable application of any methodology. For those reasons, the Court should exclude Professor Haruvy's rebuttal opinions in their entirety.

At a minimum, the Court should exclude discrete categories of opinions that also independently fail Rule 702. First, the Court should exclude Professor Haruvy's antitrust and legal opinions, which are outside the scope of rebuttal and rest on a framework he is not qualified to apply. Second, the Court should exclude his opinions regarding Ms. Butler's survey, which are based on unsupported assumptions, address the wrong inquiry, and do not demonstrate any effect on the survey's results. Third, the Court should exclude his opinions offered in response to Dr. Castronova, which do not fit the theory they purport to rebut and instead substitute a different construct altogether.

Rule 702 does not permit the admission of expert testimony that rests on speculation, reframes the relevant inquiry, or substitutes critique for analysis. Because Professor Haruvy's opinions do all three, they should be excluded.

Dated: April 22, 2026                PILLSBURY WINTHROP SHAW PITTMAN LLP

                                    _/s/ Patrick Hammon_
                                    PATRICK HAMMON
                                    ALEXIS N. WANSAC (*pro hac vice*)
                                    SARAH T. STEHLE (*pro hac vice*)

                                    Attorneys for Plaintiff,
                                    ROBLOX CORPORATION